AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

FILED

NOV 0 7 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Huawei Cellular Telephone ALE-L23 P8 Lite<br>IMEI: 860715033266729 | )<br>)<br>)<br>)<br>) |

Case No. **1 9 M J 4 9 6 7**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 and 963 | Importation of controlled substances and conspiracy to do the same |

The application is based on these facts:
See Affidavit of HSI Special Agent Jeffrey Rich, incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) *is requested*
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Jeffrey Rich
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   11/7/19

_____
*Judge's signature*

City and state:   San Diego, California

HON. ALLISON H. GODDARD
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> CELLULAR TELEPHONE
> Huawei ALE-L23 P8 Lite
> IMEI: 860715033266729
> ("**Target Device**")

currently in the possession of Customs and Border Protection, 9495 Customshouse Plaza, San Diego, California 92154.

**ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in **Attachment A** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device** for evidence described below.  The seizure and search of **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2019 to April 2, 2019:

a.   tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

c.   tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

e.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

1

**AFFIDAVIT**

2     I, Jeffrey Rich, being duly sworn, hereby state as follows:

3

**INTRODUCTION**

4     1.     This affidavit supports an application for a warrant to search the following

5 electronic device:

6

    a.     CELLULAR TELEPHONE

7     Huawei ALE-L23 P8 Lite

    IMEI: 860715033266729

8     (**"Target Device"**)

9

10 as described in Attachments A, and seize evidence of crimes, specifically, violations of

11 Title 21, United States Code, Sections 952, 960, and 963. This search supports an

12 investigation and prosecution of Maria Guadalupe VILLA-Uc ("VILLA") for the crimes

13 mentioned above. A factual explanation supporting probable cause follows.

14     2.     On or about April 2, 2019, at approximately 12:41 pm, Maria Guadalupe

15 VILLA-Uc entered the U.S. from Mexico at the San Ysidro Port of Entry in San Diego,

16 California. VILLA, a citizen of the Republic of Mexico, was the driver and sole occupant

17 of a green 2013 Ford Escape bearing Baja California license plate AKN7291 (the

18 "Vehicle"). A Customs and Border Protection Officer (CBPO) inspected the Vehicle and

19 discovered 94 plastic-wrapped packages weighing approximately (47.76 kilograms)

20 105.25 pounds. One of the 94 plastic-wrapped packages contained a white crystalline

21 substance which field tested positive for the chemical properties of methamphetamine. The

22 **Target Device** was seized from VILLA after the discovery of the methamphetamine, and

23 VILLA was arrested for the importation of a federally controlled substance. The **Target**

24 **Device** is currently in the possession of Customs and Border Protection, 9495

25 Customshouse Plaza, San Diego, California 92154.

26     3.     Based on the information below, there is probable cause to believe that a

27 search of the **Target Device** will produce evidence of the aforementioned crimes, as

28 described in Attachments B.

1

4.      The information contained in this affidavit is based upon my experience and training and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from my personal investigation of this matter and my review of documents, reports, and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation.   Instead, it contains only those facts necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.      I am a Special Agent (SA) employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), currently assigned to the multi-agency Operation Alliance in San Diego, California. I have been employed as a Special Agent since December 2016. Prior to my tenure with HSI, I was employed by the United States Border Patrol as both an agent and supervisor for approximately ten years. I have formal training and experience in the investigation of multiple federal offenses including the smuggling, trafficking, distribution, sale, and possession of controlled substances. Throughout the course of my career, I have received continuous training related to identifying the techniques, methods, and procedures employed by groups, organizations, companies, corporations, and individuals involved in the smuggling and trafficking of controlled substances.

6.      During my time as a law enforcement officer, I have participated in the investigation of numerous drug-smuggling organizations which have resulted in the issuance of search warrants, arrest warrants, and the indictments of persons for such crimes. Pursuant to my participation in those investigations, I have performed various tasks which include, but are not limited to: functioning as a case agent investigating individuals responsible for importing and distributing controlled substances; working as a surveillance agent observing and recording movements of subjects suspected of trafficking controlled substances; participating in the execution of search and arrest warrants relating to

controlled substance investigations; and interviewing defendants, witnesses, and confidential informants regarding the trafficking of controlled substances. Based on my training, experience, and discussions with other law enforcement officers, I am familiar with methods and means utilized by drug-trafficking organizations. Specifically, I am familiar with the importation of controlled substances into the United States from Mexico; the transportation of controlled substances to centralized distribution points such as San Diego and Los Angeles; and the distribution of controlled substances to destination cities throughout the United States. Additionally, I know when controlled substances reach their destination cities, they are routinely distributed by wholesale dealers to mid-level distributors, and finally to street-level users.

7.     Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.     Drug smugglers and traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b.     Drug smugglers and traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c.     Drug smugglers and traffickers and their coconspirators will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d.     Drug smugglers and traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e.     Drug smugglers and traffickers will use cellular/mobile telephones to notify or warn their coconspirators of law enforcement activity to include the presence and posture of marked and unmarked units as well as the operational status of checkpoints and border crossings; and

f.     Drug smugglers and traffickers and their coconspirators often use

cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

8.      Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.   This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of cellular/mobile telephones yields evidence:

a.      tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute methamphetamine or controlled substances within the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or controlled substances within the United States;

c.      tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or controlled substances within the United States;

d.      tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation

4

with the intent to distribute methamphetamine or controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

9.  Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones.  Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.  For that reason, I am requesting permission to search the Target Devices from January 1, 2019, up to and including April 2, 2019.

**FACTS SUPPORTING PROBABLE CAUSE**

10.  According to his report, on April 2, 2019, Customs and Border Protection Officer (CBPO) Rod Concepcion was performing vehicle pre-primary inspections at the San Ysidro Port of Entry (POE) in San Diego, California. At approximately 12:41 pm, VILLA approached CBPO Concepcion in lane twelve driving the Vehicle. VILLA was the driver and sole occupant of the vehicle. CBPO Concepcion approached the vehicle and asked VILLA where she was traveling. VILLA stated she was traveling to "Plaza Las Americas." CBPO Concepcion received two negative Customs declarations from VILLA. CBPO Concepcion requested VILLA unlock the vehicle's doors including the rear cargo area.

11.   CBPO Concepcion walked to the driver's side rear quarter panel and tapped his knuckles on the metal. CBPO Concepcion heard a solid noise. CBPO Concepcion inspected the driver's side rear quarter panel with a density meter and received an abnormally high reading. CBPO Concepcion probed the driver's side rear quarter panel from inside the cargo area but was unable to see inside. CBPO Concepcion instructed VILLA to drive the vehicle through the Z Portal scanner. At approximately 12:47 pm, CBPO Jesus Saucedo screened the vehicle utilizing a Z Portal scanner. According to his report, CBPO Saucedo observed anomalies in the rear doors, rear quarter panels, and gas tank.

12.   Per CBPO Daniel Howard's report, at approximately 12:51 pm, CBPO Howard was performing vehicle secondary inspections with his assigned Human and Narcotics Detection Dog (NHDD). CBPO Howard inspected the vehicle and observed his NHDD alert to the presence of a trained odor emanating from underneath the rear portion of the vehicle.

13.   According to a report written by CBPO Daniel Tuck, at approximately 1:15 pm, CBPO Tuck conducted a detailed inspection of the vehicle in the secondary lot. CBPO Tuck searched the vehicle and discovered a total of 94 plastic-wrapped packages concealed in the vehicle. CBPO Tuck discovered 30 packages in the firewall, 29 in the driver's side quarter panel, 20 in the passenger's side quarter panel, 6 in the driver's side rear door, and 9 in the passenger's side rear door. Each package contained a white crystalline substance which later tested positive for the properties of methamphetamine. The 94 packages weighed a combined 47.76 kilograms (105.25 pounds). (Later laboratory tests confirmed a weight of 41.5 kilograms of actual methamphetamine.) At approximately 2:40 pm, CBPO Tuck arrested VILLA for importing controlled substances into the United States (US) and notified the undersigned, Homeland Security Investigations (HSI) Special Agent (SA) Jeffrey Rich.

14.   At approximately 3:08 pm, HSI SA John Martinez and I escorted VILLA to an interview room with audio and video recording equipment. At approximately 3:18 pm,

SA Martinez advised VILLA of her constitutional rights, per Miranda, in the Spanish language. VILLA stated she understood her rights, waived her right to consult an attorney prior to making any statements, and agreed to speak with SA Martinez and me.

15.    During the post-*Miranda* interview, VILLA denied knowledge of the controlled substances concealed inside the Vehicle. VILLA stated she was traveling to the United States to shop and meet with her friend Andrea RAMIREZ. VILLA acknowledged ownership of the **Target Device** and accessed it in our presence. VILLA retrieved RAMIREZ's telephone number from the **Target Device** and provided it to SA Martinez and me. SA Martinez called RAMIREZ's telephone number which was answered by an unidentified person who stated there was no "Andrea" present and informed SA Martinez he had called a pizza restaurant. I conducted open-source inquiries on the telephone number and determined it belonged to a pizza restaurant in Tijuana, B.C., Mexico.

16.    I have reviewed VILLA's crossing records, which reveal that VILLA entered the United States from Mexico approximately 11 times between January 1, 2019 and April 2, 2019. Records revealed all 11 of those border crossings were made in the Vehicle.

17.    Based upon my experience and investigation in this case, there is probable cause to believe that VILLA, as well as other persons currently unknown, were involved in an ongoing conspiracy to import and transport methamphetamine. Based on my experience investigating drug smugglers and traffickers, there is probable cause to believe that VILLA used the **Target Device** to coordinate with coconspirators regarding the importation, transportation, and distribution of methamphetamine, and to otherwise further this conspiracy both inside and outside of the United States. Accordingly, there is also probable cause to believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device**, which may identify other persons involved in drug smuggling and trafficking activities.

18.    During her interactions with me, VILLA consented to the download of the **Target Device.**  I have not considered the information downloaded on that prior occasion

1    in forming my belief that probable cause exists to forensically search the Target Device.

2                                    **METHODOLOGY**

3         19.   It is not possible to determine, merely by knowing the cellular/mobile

4    telephone's make, model and serial number, the nature and types of services to which the

5    device is subscribed, and the nature of the data stored on the device.  Cellular/mobile

6    devices today can be simple cellular telephones and text message devices, can include

7    cameras, can serve as personal digital assistants and have functions such as calendars and

8    full address books and can be mini-computers allowing for electronic mail services, web

9    services and rudimentary word processing.  An increasing number of cellular/mobile

10   service providers now allow for their subscribers to access their device over the internet

11   and remotely destroy all of the data contained on the device.  For that reason, the device

12   may only be powered in a secure environment or, if possible, started in "flight mode" which

13   disables access to the network.  Unlike typical computers, many cellular/mobile telephones

14   do not have hard drives or hard drive equivalents and store information in volatile memory

15   within the device or in memory cards inserted into the device.  Current technology provides

16   some solutions for acquiring some of the data stored in some cellular/mobile telephone

17   models using forensic hardware and software.  Even if some of the stored information on

18   the device may be acquired forensically, not all of the data subject to seizure may be so

19   acquired.  For devices that are not subject to forensic data acquisition or that have

20   potentially relevant data stored that is not subject to such acquisition, the examiner must

21   inspect the device manually and record the process and the results using digital

22   photography.  This process is time and labor intensive and may take weeks or longer.

23        20.   Following the issuance of this warrant, I will collect the **Target Device** and

24   subject them to analysis.  All forensic analysis of the data contained within the telephone

25   and its memory cards will employ search protocols directed exclusively to the

26   identification and extraction of data within the scope of this warrant.

27        21.   Based on the foregoing, identifying and extracting data subject to seizure

28   pursuant to this warrant may require a range of data analysis techniques, including manual

                                            8

1  review, and, consequently, may take weeks or months.   The personnel conducting the

2  identification and extraction of data will complete the analysis within ninety (90) days,

3  absent further application to this court.

4  **CONCLUSION**

5      22.    Based on all of the facts and circumstances described above, there is probable

6  cause to conclude that VILLA used the **Target Device** to facilitate violations of Title 21,

7  United States Code, Sections 952, 960, and 963.

8      23.    Because the **Target Device** was promptly seized during the investigation of

9  VILLA's smuggling activities and have been securely stored, there is probable cause to

10  believe that evidence of illegal activities committed by VILLA continues to exist on the

11  **Target Device**.  Based on the above facts and my training and experience, there is probable

12  cause to believe that evidence of violations of Title 21, United States Code, Sections 952,

13  960, and 963 will be found on the **Target Device** between January 1, 2019 up to and

14  including April 2, 2019.

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

9

1       24.     WHEREFORE, I request that the court issue a warrant authorizing law

2 enforcement agents and/or other federal and state law enforcement officers to search the

3 items described in Attachments A, and to seize items listed in Attachments B, using the

4 methodology described above.

5

6 I swear the foregoing is true and correct to the best of my knowledge and belief.

7

8                                                _____

9                                              Jeffrey Rich
                                             HSI Special Agent

10

11 Subscribed and sworn to before me this ____7th____ day of November, 2019.

12

13

14

15 _____
    The Honorable Allison H. Goddard

16     United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28